Filed 11/15/22  P. v. Franco CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>ABRAN FRANCO,<br><br>    Defendant and Appellant. | D079397<br><br><br><br>(Super. Ct. No. SCD220281) |

APPEALS from a judgment of the Superior Court of San Diego County, Joan P. Weber, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Cynthia M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, A. Natasha Cortina, Alan L. Amann and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

In a prior appeal, we affirmed Abran Franco's convictions for two counts of second-degree murder (Pen. Code,[1] § 187, subd. (a)) based on two separate shooting incidents, along with true findings on vicarious firearm and gang enhancements (§§ 186.22, subd. (b)(1), 12022.53, subds. (d) and (e)(1)). (*People v. Franco* (Dec. 10, 2012, D060354) [nonpub. opn.].)

In 2020, Franco filed a petition to vacate his convictions and for resentencing pursuant to amended section 1170.95 (now section 1172.6).[2] After appointing counsel, finding that Franco had established a prima facie case of entitlement to relief, and issuing an order to show cause, the trial court held a hearing on the petition based on the evidentiary record of the original trial. The trial court ultimately denied Franco's petition as to one of the second-degree murder convictions (count 2), but vacated his other second-degree murder conviction (original count 1) and redesignated the offense as assault (new count 1) and disturbing the peace (count 3).

At Franco's resentencing hearing, the court imposed upper-term sentences for each of the new assault and disturbing the peace counts,[3] applying the gang enhancement under section 186.22, subdivision (d) to each. The court also sentenced Franco to 15 years to life for the second-degree

---

[1]   All further statutory references are to the Penal Code.

[2]   Franco brought his petition under former section 1170.95, which was amended effective January 1, 2022, and then renumbered as section 1172.6 without substantive change on June 30, 2022. (See Stats. 2022, ch. 58, § 10, (Assem. Bill No. 200).) We refer to the subject statute by its current number throughout this opinion.

[3]   The trial court stayed the three-year sentence for disturbing the peace pursuant to section 654, which prohibits punishing the same act or omission under more than one provision. (See § 654, subd. (a).)

2

murder in count 2, and imposed but stayed the gang enhancement under section 186.22, subdivision (b)(5).[4] The court struck the penalty for the vicarious firearm enhancement, but did not strike the enhancement in its entirety.[5]

Franco contends on appeal: (1) that the trial court erred in denying his section 1172.6 petition as to count 2, (2) that the gang enhancements must be vacated as to all three counts due to amendments to section 186.22, and (3) that the case must be remanded for resentencing on redesignated counts 1 and 3 due to amendments to section 1170, which altered the court's discretion in selecting a determinate sentence.

The People cross-appeal, claiming that the trial court erred in: (1) granting Franco's section 1172.6 petition as to his original conviction for

---

[4] Although the abstract of judgment and related minute order indicate that the 15-year minimum parole eligibility enhancement (§ 186.22, subd. (b)(5)) was not stayed, the court stated at the resentencing hearing that it would impose and stay that enhancement. We rely on the trial court's statements at the hearing because "[w]here there is a discrepancy between the oral pronouncement of judgment and the minute order or the abstract of judgment, the oral pronouncement controls." (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385 (*Zackery*).)

[5] The court stated at the resentencing hearing that it would strike the 25-year-to-life penalty under the firearm enhancement, but not the enhancement in its entirety. As noted *ante*, the court's oral pronouncements control. (See *Zackery, supra*, 147 Cal.App.4th at p. 385.)

3

second-degree murder in count 1, and (2) striking any portion[6] of the vicarious firearm enhancement accompanying count 2. The People concede, however, that remand is required for resentencing on counts 1 and 3 in light of amendments to section 1170 and that the gang enhancements should also be vacated, but not as to count 2.

We conclude that substantial evidence supports the trial court's denial of Franco's 1172.6 petition for count 2, and that substantial evidence also supports the granting of the petition as to count 1. Accordingly, we affirm those aspects of the judgment. However, we accept the People's concessions: (1) that remand is required for resentencing on counts 1 and 3 pursuant to amended section 1170, and (2) that we must reverse the jury's true findings on the gang enhancements as to those counts in light of intervening changes in the law.

We further conclude that the gang enhancement for count 2 and the jury's vicarious firearm enhancement true findings must also be vacated, and we remand the matter to permit the People to retry those gang-related enhancements if they so choose. If the People do retry the enhancements (including the vicarious firearm enhancement) and they are found true, the court may consider whether to exercise its discretion to impose a lesser-included firearm enhancement at resentencing, subject to the limitations prescribed in section 12022.53, subdivision (e)(2).

---

[6] Both parties assume in their briefing that the trial court struck the vicarious firearm enhancement entirely, but because the record shows the court only struck the 25-year-to-life penalty, we construe the parties' arguments accordingly. (See §§ 12022.53, subd. (h) [court may strike or dismiss an enhancement pursuant to section 1385] and 1385, subd. (b)(1) [if court has authority to strike or dismiss an enhancement, "the court may instead strike the additional punishment for that enhancement in the furtherance of justice . . . ."].)

4

FACTUAL AND PROCEDURAL BACKGROUND

A. *Evidence from Underlying Proceedings*

    1. <u>Killing of Javier Quiroz</u>

One evening in August 2007, 14-year-old Javier Quiroz and two friends were talking outside an apartment complex where Quiroz lived. Quiroz was not known to be a member of any criminal gang. At one point that night, Quiroz left his friends to meet a girl at nearby Colina Park. After some time passed and it was getting late, his friends tried to call Quiroz but there was no answer. Then they heard gunshots nearby, and shortly thereafter they received a call from Quiroz's phone. But when they answered the call, they could only hear someone struggling to breathe on the other end of the line. More gunshots rang out through the phone line and in the air. Quiroz's friends ran to the park and found him crawling near some bushes, bleeding profusely. He died soon afterwards from a gunshot wound through the chest.

During a subsequent interview with law enforcement, Franco said he and other members of his gang, the Southeast Locos, drove to Colina Park that night because a rival gang had challenged them to a fight there. Franco's gang believed it could be a setup, and he drove to the park with other Southeast Locos members Reynaldo Torres and Anthony Zendejas to "scope out the area[.]" Torres did not tell his cohorts he was carrying a gun at the time, but Franco was not surprised Torres was armed.

According to Franco, he saw Quiroz when they approached the park in Franco's car, and he pulled up to Quiroz so that Torres could ask him "where you from," a common way gang members confront potential rivals. Quiroz did not answer, and instead took off running. Torres got out of the car and began shooting at Quiroz, missing him at first. But Torres chased Quiroz, found him behind a tree, and shot him multiple times. Torres then returned

5

to Franco's parked car and they left the scene. Franco found out the next day that Quiroz died from his wounds.

    2. <u>Killing of Angel Hernandez</u>

Eight months later, in April 2008, Angel Hernandez, a member of the Trust No Souls (TNS) gang, walked into a market with two other men to buy soda and batteries. The market was in Southeast Locos territory, but that part of the neighborhood had been the subject of a dispute between the Southeast Locos and TNS.

According to law enforcement interviews and recorded conversations with an informant, earlier that night, Franco, Zendejas, and Edwin Rendon, another Southeast Locos member, discussed the fact that there had recently been "a lot of tagging" or graffiti by rivals in their neighborhood, which they saw as a sign of disrespect. They decided to drive around the neighborhood in Franco's car and look for rival gang members to confront. Although Franco did not carry a weapon himself, he admitted he knew that Zendejas was armed with a gun that night.

When Franco drove past the market, he saw Hernandez and his companions wearing gang attire. Franco turned the car around and pulled into the market parking lot to confront them. When Zendejas asked "where you from," Hernandez's group responded "TNS gang." Zendejas challenged them to a fight and started to exit the vehicle, but according to Franco, Hernandez or someone in his group began throwing rocks at Zendejas and the car. Zendejas responded by firing his gun at Hernandez from the passenger seat. Franco then drove away with Zendejas and Rendon still in the vehicle. Later that night, Franco learned of Hernandez's death from watching the news.

6

### 3. Gang Evidence

Franco and the People stipulated at his trial that Franco, Zendejas, Torres, Rendon, and others were members of the Southeast Locos, a criminal street gang as the term was then defined by section 186.22. The parties also stipulated that Hernandez was a member of TNS, a criminal street gang.

The People's gang expert testified about the significance of tagging in gang rivalries and described what typically happens when gang members challenge rival members. The expert stated that when a gang member asks, "where you from," the question usually invites a physical confrontation that can escalate from fistfights to shootings. He further testified that guns were Southeast Locos' weapon of choice when challenging rivals. The expert opined that gang members challenging rivals in their own home territory would benefit their gang by, among other things, discouraging encroachment on their turf.

### B. *Convictions and Sentence*

The People charged Franco by information[7] with the murder of Quiroz in violation of section 187, subdivision (a), alleging that he committed the murder "for the benefit of, at the direction of, and in association with a criminal street gang with the specific intent to promote, further and assist in criminal conduct by gang members within the meaning of [section] 186.22(b)(1)." The People further alleged that at least one principal in the offense personally used a firearm and "proximately caused great bodily injury and death" to a non-accomplice within the meaning of section 12022.53,

---

[7]  According to the People's briefing on Franco's 1172.6 petition, Zendejas was charged in the information as Franco's codefendant. Zendejas pled guilty to first-degree murder for Quiroz's death and second-degree murder with personal use of a firearm in Hernandez's death. He was sentenced to a stipulated term of 44 years to life.

subdivisions (d) and (e)(1).  In a separate count, the People charged Franco with Hernandez's murder in violation of section 187, subdivision (a), alleging the same gang- and firearm-related allegations.

In April 2011, a jury convicted Franco of second-degree murder for Quiroz's killing and second-degree murder for Hernandez's killing.  (§ 187, subd. (a).)  The jury also made true findings on the enhancement allegations that Franco acted to benefit a gang in both murders, and that at least one principal in each offense personally used a firearm proximately causing great bodily injury and death.  (§§ 186.22, subd. (b)(1), 12022.53, subds. (d) and (e)(1).)

In July 2011, the trial court sentenced Franco to an indeterminate term of 80 years to life in prison, consisting of 15 years to life for each of the second-degree murder counts, plus 25 years to life for each attendant firearm enhancement.

C. *Prior Appeal*

Franco appealed his conviction, contending that mistakes in the abstract of judgment should be corrected and that the trial court erred in refusing to instruct the jury on voluntary manslaughter based on imperfect self-defense in connection with Hernandez's murder.  In December 2012 we ordered that the abstract of judgment be corrected, but otherwise affirmed.  (*People v. Franco*, *supra*, D060354.)

D. *Petition for Resentencing*

In January 2020, Franco filed a petition for resentencing under former section 1170.95 (current section 1172.6).  The court appointed counsel for

Franco, found that he had established a prima facie case of entitlement to relief, and issued an order to show cause.

In response to the order to show cause, the parties jointly submitted an electronic copy of all the original trial transcripts to the court. After holding a hearing, the trial court denied Franco's petition as to count 2 for Hernandez's murder, but vacated his second-degree murder conviction for Quiroz's death and redesignated the offense as assault (§ 240 [new count 1]) and disturbing the peace (§ 415 [count 3]). At the hearing, the court noted that leading up to Quiroz's murder, the evidence did not show Franco was aware that Torres had a gun, or that Franco knew or expected Torres would shoot someone like Quiroz, who was not a rival gang member. The court observed that there was no evidence that Franco encouraged Torres to shoot, or that Franco supplied the gun, or that Franco knew Torres or Zendejas might escalate the confrontation from brawling to killing, or that Franco had ever been with the gang before when it committed an armed shooting, or that he knew the gang was going to kill an "innocent kid." Accordingly, the court found insufficient evidence of implied malice in connection with Quiroz's murder, and it granted his petition as to that count.

In contrast, the court stated that Franco's culpability in Hernandez's death was supported by the fact that Franco knew, from the prior encounter with Quiroz, that such confrontations could end in death. The court also found it significant that Franco went out with his friends that night and agreed to drive the car specifically to confront rivals to protect their turf, knowing Zendejas was armed with a gun. The court therefore denied Franco's petition as to aiding and abetting the murder of Hernandez.

At Franco's resentencing hearing, the court imposed upper term sentences of three years each for the redesignated assault and disturbing the

9

peace counts arising from Quiroz's death, pursuant to the gang enhancement under section 186.22, subdivision (d), which authorizes the court to elevate a misdemeanor offense into one punishable as a felony and provides for three possible terms of imprisonment: one, two, or three years. (§ 186.22, subd. (d); see *Robert L. v. Superior Court* (2003) 30 Cal.4th 894, 906–907; *People v. Sweeney* (2016) 4 Cal.App.5th 295, 301.) The court stayed Franco's three-year sentence for disturbing the peace pursuant to section 654.

The court again imposed a sentence of 15 years to life for Hernandez's murder, and the court imposed and stayed a gang enhancement under section 186.22, subdivision (b)(5), which would require that Franco serve a minimum of 15 years before he is eligible for parole. Both parties argued that the court only had discretion to either strike or impose the vicarious firearm enhancement, and the court remarked that it was unfortunate it could not choose one of the lesser enhancements. Ultimately the court did not strike the firearm enhancement entirely, but in light of Franco's limited involvement with the actual use of a firearm, the court decided to strike the 25-year-to-life penalty under section 12022.53, subdivisions (d) and (e)(1).

Franco and the People both timely appealed the judgment.

DISCUSSION

I

Franco first argues that the trial court erred in denying his section 1172.6 petition as to his conviction for the Hernandez murder. In their cross-appeal, the People contend that the court erred in granting Franco's petition as to his conviction for second-degree murder in connection with Quiroz's death. We conclude there was no reversible error in the trial court's rulings with respect to either of the two convictions.

A. *Governing Law*

Effective January 1, 2019, Senate Bill No. 1437 significantly limited the scope of the felony-murder rule and eliminated liability for murder under the natural and probable consequences doctrine through two key provisions. (Stats. 2018, ch. 1015, § 1, subd. (f); see *People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*).) First, Senate Bill No. 1437 amended section 189 so that "[d]efendants who were neither actual killers nor acted with the intent to kill can be held liable for murder only if they were 'major participant[s] in the underlying felony and acted with reckless indifference to human life[.]' " (*Strong*, at p. 708, citing § 189, subd. (e)(3).) Second, it amended section 188 to provide that, when the felony-murder rule does not apply, a principal in the crime of murder can only be convicted where they acted "with malice aforethought," and "[m]alice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3); see *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).)

Senate Bill No. 1437 also established a new procedure to allow defendants who could not have been convicted under the new law to petition the sentencing court to vacate their murder conviction and resentence them on any remaining counts. (See § 1172.6, subd. (a); *Strong*, *supra*, 13 Cal.5th at p. 708.) After receiving a petition containing the required information, "the court must evaluate the petition 'to determine whether the petitioner has made a prima facie case for relief.' " (*Strong*, at p. 708, citing § 1172.6, subd. (c).) If the defendant makes a prima facie showing of entitlement to relief, the court must issue an order to show cause and hold an evidentiary hearing. (§ 1172.6, subds. (c), (d)(3).)

Effective January 1, 2022, Senate Bill No. 775 (2020–2021 Reg. Sess.) (Senate Bill No. 775) amended section 1172.6 to clarify certain aspects of the

11

law, including that (1) the burden of proof at a resentencing hearing under this section is "on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder" under California law as amended by Senate Bill No. 1437 and (2) "[a] finding that there is substantial evidence to support a conviction for murder . . . is insufficient to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (§ 1172.6, subd. (d)(3); see also Stats. 2021, ch. 551, § 1, subd. (c).)  Senate Bill No. 775 clarified that the trial court's role in a section 1172.6 proceeding is to act as an independent fact finder and determine, in the first instance, whether the petitioner committed murder under the law as amended by Senate Bill No. 1437.  (*People v. Clements* (2022) 75 Cal.App.5th 276, 294, 297 (*Clements*); see also *People v. Garrison* (2021) 73 Cal.App.5th 735, 745, fn. omitted [the trial court acts as "an independent fact finder, to determine beyond a reasonable doubt whether defendant is guilty of murder under a valid theory of murder"].)

"Though [Senate Bill No. 1437] abolished the natural and probable consequences doctrine, it maintained the viability of murder convictions based on implied malice, and the definition of implied malice remains unchanged. (§ 188.)" (*Clements*, *supra*, 75 Cal.App.5th at p. 298.)  "[S]econd degree murder . . . is 'the unlawful killing of a human being with malice aforethought but without the additional elements, such as willfulness, premeditation, and deliberation, that would support a conviction of first degree murder.' [Citation.] . . . 'Malice is implied when the killing is proximately caused by " 'an act, the natural consequences of which are dangerous to life, which act was deliberately performed by a person who knows that his conduct endangers the life of another and who acts with conscious disregard for life.' " [Citation.]  In short, implied malice requires a

12

defendant's awareness of engaging in conduct that endangers the life of another . . . .' " (*People v. Cravens* (2012) 53 Cal.4th 500, 507.)

B. *Standard of Review*

We review the trial court's factual findings for substantial evidence. (*Clements, supra,* 75 Cal.App.5th at p. 298.)  "Our job on review is different from the trial judge's job in deciding the petition.  While the trial judge must review all the relevant evidence, evaluate and resolve contradictions, and make determinations as to credibility, all under the reasonable doubt standard, our job is to determine whether there is any substantial evidence, contradicted or uncontradicted, to support a rational fact finder's findings beyond a reasonable doubt." (*Ibid*.)  We will not reverse unless there is no hypothesis upon which sufficient substantial evidence exists to support the trial court's decision.  (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)  We must "presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence." (*People v. Jones* (1990) 51 Cal.3d 294, 314.)  "The same standard applies when the conviction rests primarily on circumstantial evidence." (*People v. Kraft* (2000) 23 Cal.4th 978, 1053.)  "An appellate court must accept logical inferences that the [trier of fact] might have drawn from the circumstantial evidence." (*People v. Maury* (2003) 30 Cal.4th 342, 396.)

C. *Analysis*

   1. Hernandez Murder Conviction

Franco contends that the trial court erred in denying his section 1172.6 petition as to count 2 for Hernandez's murder.  Specifically, Franco argues

there was insufficient evidence to support the trial court's finding that he acted with implied malice. We disagree.

As noted, one harbors implied malice when committing an act that is dangerous to life, knowing that it endangers the life of another, and does so with a conscious disregard for life. (*People v. Nieto Benitez* (1992) 4 Cal.4th 91, 106–107.) In this case, Franco agreed to drive Zendejas and other gang members around their neighborhood specifically to look for rivals. Franco knew that Zendejas was armed with a gun. When Franco drove past the market and saw Hernandez and his companions wearing gang attire, he turned the car around and drove into the parking lot to confront them. When asked post-arrest whether he knew that the odds of a shooting happening that night were "pretty good", Franco said "yes, it's true."

Moreover, the People's gang expert testified that when a gang member instigates a physical confrontation with a rival, the altercation can quickly escalate from fighting with fists to shooting. Franco also knew this to be true because, just eight months earlier, when he and Zendejas were driving together with Torres looking for rival gang members, the outing ended with Quiroz being shot to death without any provocation.

The trial court could reasonably infer that Franco acted with actual knowledge of and conscious disregard for the danger to human life when he again agreed to drive fellow gang members to seek out and confront rival gang members—and did so knowing that one of his fellow gang members was again armed with a firearm. Franco intentionally aided Zendejas by driving him to confront Hernandez knowing that Zendejas was armed, and Franco even said in his post-arrest interview that he was the one who spotted Hernandez in the first place. Even if Franco did not specifically intend to aid Zendejas in committing a shooting, "an aider and abettor who does not

14

expressly intend to aid a killing can still be convicted of second degree murder if the person knows that his or her conduct endangers the life of another and acts with conscious disregard for life." (*Gentile*, *supra*, 10 Cal.5th at p. 850.) Substantial evidence supports such a finding on this record.

Franco argues that this theory of implied malice "is just another way of attempting to revive the defunct natural and probable consequences doctrine . . . ." We disagree. Courts have rejected similar arguments in other cases. (See, e.g., *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 590 (*Glukhoy*); *People v. Superior Court (Valenzuela)* (2021) 73 Cal.App.5th 485, 503–504; *People v. Powell* (2021) 63 Cal.App.5th 689, 711–713.) "[U]nder the natural and probable consequences doctrine, the prosecution was not required to prove the mental state required for implied malice: the aider and abettor was subjectively aware of the risk of death and acted in conscious disregard thereof. On the other hand, the prosecution must prove those elements to establish direct aiding and abetting liability." (*Glukhoy*, at p. 590.) Thus, Franco's liability for directly aiding and abetting implied malice murder required a higher degree of culpability (subjective awareness and conscious disregard of the risk of death) than the now-invalid natural and probable consequences theory of aiding and abetting murder.

Franco's conviction in count 2 for directly aiding and abetting an implied malice murder is also supported by other evidence. "It is well-settled that the presence at the scene of the crime and failure to prevent it, companionship and conduct before and after the offense, including flight, are relevant to determining whether a defendant aided and abetted in the commission of the crime." (*Glukhoy*, *supra*, 77 Cal.App.5th at p. 599.)

"Motive is another circumstance to be considered in determining aiding and abetting liability." (*Id.* at pp. 599–600.)

Here, Franco was not only present at the scene, his companionship with Zendejas extended back to at least Quiroz's murder, Franco plotted with his cohorts beforehand to retaliate against rivals for perceived disrespect, he identified Hernandez as a target, and he provided Zendejas with the means to flee the scene. These facts all support the court's finding that Franco aided and abetted an implied malice murder. (See also *People v. Schell* (2022) 84 Cal.App.5th 437, 442–443.) We therefore conclude that the trial court did not err in denying Franco's section 1172.6 petition as to Hernandez's murder.

2. <u>Quiroz Murder Conviction</u>

The People argue that the trial court's granting of Franco's petition as to the Quiroz murder was erroneous because it rested on the fact that Quiroz was not a gang member. Regardless of whether the evidence might have supported a contrary finding, however, there was ample evidentiary support for the trial court's finding that the prosecution failed to establish Franco acted with implied malice beyond a reasonable doubt. As we have noted, the trial court sits as the fact-finder in a section 1172.6 hearing (*Clements, supra*, 75 Cal.App.5th at p. 295), and our job on review is limited to determining whether there is substantial evidence to support the trial court's finding. (*Id.* at p. 298.) We decline the People's invitation to second-guess the trial court's factual finding on implied malice.

As the trial court noted, in contrast to the circumstances surrounding Hernandez's murder, there was no evidence with respect to the Quiroz murder that Franco was aware Torres had a gun or that Franco had previously participated in a gang shooting. For the Hernandez murder, moreover, Franco's group encountered Hernandez after setting out with the

16

specific purpose of seeking confrontation. But when Franco's group encountered Quiroz, Franco said they only intended to "scope out the area" and look for signs of a setup. For the Quiroz murder, there was also substantial evidence supporting the trial court's finding that Franco had no reason to know Torres would suddenly chase after and shoot someone who was not a rival gang member.

Viewing the totality of the evidence in a light most favorable to the judgment, we conclude that substantial evidence supports the trial court's conclusion that the prosecution failed to prove beyond a reasonable doubt that Franco acted with implied malice in connection with the Quiroz shooting. While contrary evidence may exist to support a different finding, our task is not to reweigh the evidence. (See *Clements*, *supra*, 75 Cal.App.5th at p. 298; *People v. Stanley* (1995) 10 Cal.4th 764, 793 [" 'If the circumstances reasonably justify the trier of fact's findings, the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.' "].) It would be extraordinary for us to substitute our judgment for that of the fact-finder and conclude that the record establishes as a matter of law that Franco acted with implied malice beyond a reasonable doubt. We therefore find no reversible error in the trial court's decision to vacate and redesignate Franco's conviction relating to Quiroz's murder.

## II

Franco asserts, and the People concede, that the case should be remanded for resentencing given ameliorative changes to section 1170, which governs determinate sentencing. We accept the People's concession and

agree that due to Franco's youth[8] at the time of the offenses, remand for resentencing is appropriate under section 1170 with respect to his upper term sentences for redesignated counts 1 and 3.

Assembly Bill No. 124 (Stats. 2021, ch. 695, § 5 (Assembly Bill No. 124)) and Senate Bill No. 567 (Stats. 2021, ch. 731, § 1.3), both effective January 1, 2022, amended section 1170 to require that in situations where three possible terms of imprisonment may be imposed for a crime, the trial court must impose the lower term if the defendant's youth was a contributing factor in the commission of the offense, "unless the court finds that the aggravating circumstances outweigh the mitigating circumstances [and] that imposition of the lower term would be contrary to the interests of justice[.]" (§ 1170, subds. (b)(1) and (b)(6).) Accordingly, section 1170 now contains "a presumption in favor of a low prison term when a defendant is under 26 years of age at the time of the offense." (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1038 (*Flores*).)

We agree with the parties that Assembly Bill No. 124's amendments apply retroactively to Franco's convictions for counts 1 and 3, which were not final at the time the amendments became effective. (See *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1095; *Flores*, *supra*, 73 Cal.App.5th at p. 1039.) Because Franco was 20 years old at the time of the offenses, the trial court is now required to examine whether his age "was a contributing factor" that would require imposing the lower term. (§ 1170, subd. (b)(6).) It must also exercise its discretion as to aggravating and mitigating circumstances to decide whether imposing the lower term would be contrary

---

8    Section 1016.7 defines youth as anyone "under 26 years of age on the date the offense was committed." (§ 1016.7, subd. (b); Assem. Bill No. 124 (2021-2022 Reg. Sess.) § 4.)

to the interests of justice. (*Ibid.*) The People do not contend (and we see no basis for concluding) that the record clearly indicates the trial court would not have imposed low-term sentences if it had been fully aware of its discretion under newly enacted subdivision (b)(6) of section 1170. Accordingly, we remand the case for resentencing on Franco's redesignated counts 1 and 3 for assault and disturbing the peace.

## III

Franco also asserts that the gang enhancements imposed by the trial court under section 186.22, subdivisions (b)(5) and (d), must be reversed due to a retroactive change in the statutory scheme governing gang enhancements. (See Stats. 2021, ch. 699, § 3, eff. Jan. 1, 2022 (Assembly Bill No. 333).)[9] We agree.

Section 186.22, subdivision (b)(1) generally provides for a sentencing enhancement for any "person who is convicted of a felony committed for the benefit of, at the direction of, or in association with a criminal street gang, with the specific intent to promote, further, or assist in criminal conduct by gang members."

---

[9] Franco does not challenge the jury's true finding, as part of the vicarious firearm enhancement, that he was a principal in a crime where at least one principal caused death to a non-accomplice by personally and intentionally discharging a firearm pursuant to section 12022.53, subdivisions (d) and (e)(1). As discussed *post*, we note that section 12022.53, subdivision (e)(1), also requires a true finding that Franco violated section 186.22, subdivision (b), in order for the vicarious firearm enhancement to apply.

Furthermore, as we discuss *post*, section 12022.53, subdivision (e)(2), provides that a gang enhancement under section 186.22 cannot be imposed "in addition to an enhancement imposed pursuant to [section 12022.53, subdivision (e)], unless the person personally used or personally discharged a firearm in the commission of the offense."

Effective January 1, 2022, Assembly Bill No. 333 amended section 186.22 to require proof of additional elements to establish a gang enhancement. (*People v. Lopez* (2021) 73 Cal.App.5th 327, 343 (*Lopez*).) When Franco was tried, he stipulated that he was a member of the Southeast Locos, a criminal street gang within the meaning of section 186.22. At that time, section 186.22 defined a " 'criminal street gang' " as "any ongoing organization, association, or group of three or more persons . . . whose members *individually or collectively* engage in, or have engaged in, a pattern of criminal gang activity." (Former § 186.22, subd. (f), italics added.) Assembly Bill No. 333 narrowed the definition to "an ongoing, organized association or group of three or more persons . . . whose members *collectively* engage in, or have engaged in, a pattern of criminal gang activity." (§ 186.22, subd. (f), italics added.) This change requires that the People "prove that two or more gang members committed each predicate offense." (*People v. Delgado* (2022) 74 Cal.App.5th 1067, 1072; accord, *Lopez*, at pp. 344–345.)

Assembly Bill No. 333 also narrowed the definition of "pattern of criminal gang activity," such that the predicate offenses must have been committed by two or more members of the gang (as opposed to any persons) and must have "*commonly* benefited a criminal street gang" in a manner "more than reputational[.]" (§ 186.22, subd. (e)(1), italics added.) Additionally, at least one of the predicate offenses must have occurred after the effective date of the chapter, and the last of those offenses must have occurred within three years of the prior offense and the alleged current offense. (*Ibid.*) Assembly Bill No. 333 precluded the current offense from counting as a predicate offense, and also reduced the number of qualifying offenses that can be used to establish a pattern of criminal gang activity. (§ 186.22, subds. (e)(2) and (e)(1)(A)-(Z).)

20

The People concede, and we accept their concession, that the misdemeanor-to-felony gang enhancement under section 186.22, subdivision (d), should be reversed as to counts 1 and 3 because Assembly Bill No. 333's changes are retroactive and no evidence was introduced regarding predicate offenses. Franco "has a constitutional right to a jury trial on every element of the charged enhancement." (*Lopez, supra*, 73 Cal.App.5th at p. 346.) Furthermore, reversal is necessary because the People concede, and we agree, that the absence of this proof was not harmless beyond a reasonable doubt. (See *People v. Sek* (2022) 74 Cal.App.5th 657, 668 (*Sek*).)

We also agree with the People's assertion, which Franco does not dispute, that the People may retry the gang enhancement allegations on remand if they so choose. (See *Sek, supra*, 74 Cal.App.5th at p. 669 [allowing the People to retry gang enhancements on remand because reversal was not "based on the insufficiency of the evidence required to prove a violation of the statute as it read at the time of trial," so "the double jeopardy clause of the Constitution will not bar a retrial."]; *People v. Shirley* (1982) 31 Cal.3d 18, 71 [retrial permitted where posttrial change in law invalidates certain evidence because prosecution proved its "case under the law as it then stood" having "had little or no reason to produce other evidence of guilt."].)

However, we reject the People's argument that the parole eligibility gang enhancement under section 186.22, subdivision (b)(5), should remain intact as to count 2 because the denial of Franco's section 1172.6 petition as to that count made his conviction "final" for retroactivity purposes. Under section 1172.6, a defendant who succeeds on a resentencing petition is entitled to vacatur of the murder conviction "and to recall [of] the sentence and resentenc[ing] . . . *on any remaining counts in the same manner as if the petitioner had not previously been sentenced*, provided that the new sentence,

21

if any, is not greater than the initial sentence." (§ 1172.6, subd. (d)(1), italics added; see also *id.*, subd. (d)(3) ["If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges."].) Because the trial court granted Franco's petition as to the murder conviction in count 1, section 1172.6 required a recall of the entire sentence and resentencing on the remaining counts. As a result, Franco's conviction on count 2 was no longer final for retroactivity purposes. (See *People v. Keel* (2022) 84 Cal.App.5th 546, 564–565.)

Furthermore, under the "full resentencing" rule, "when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances.' [Citation.]" (*People v. Buycks* (2018) 5 Cal.5th 857, 893.) Resentencing is not limited to "just the portion [of the sentence] subjected to recall" as the People suggest. (See *ibid.*) Rather, the full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant. (*People v. Valenzuela* (2019) 7 Cal.5th 415, 424–425.)

The People cite *People v. Padilla* (2022) 13 Cal.5th 152 (*Padilla*), but that case does not support their assertion that count 2's gang enhancement cannot be disturbed. In *Padilla*, the Supreme Court stated that a case is final "when 'the criminal *proceeding as a whole*' has ended[,]" and when a sentence is vacated, the judgment becomes nonfinal and the trial court "regain[s] the jurisdiction and duty to consider" what punishment is appropriate. (*Padilla*, at pp. 161–162, italics added.) Thus, *Padilla* supports our conclusion.

Accordingly, we conclude that all of the gang enhancements under section 186.22 imposed by the trial court must be vacated, but the People may re-try the enhancements if they so choose.

IV

Although neither party raised this issue, because we are vacating the jury's true findings on the gang enhancement allegations, we must also reverse its true findings as to the gang-related vicarious firearm enhancements. (See § 12022.53, subds. (d) and (e)(1).) A vicarious firearm enhancement under section 12022.53, subdivision (e)(1), is dependent on a true finding that the defendant "violated subdivision (b) of Section 186.22." (§ 12022.53, subd. (e)(1)(A).) Accordingly, vacating the gang enhancement true findings in this case means the jury's vicarious firearm enhancement true findings must be vacated as well.

Since we are vacating the firearm enhancement and the case is being remanded for resentencing on other grounds, we need not decide whether the trial court was aware of its discretion to impose a lesser firearm enhancement, or whether the People forfeited the issue. As stated above, the People may retry some or all of the vacated gang-related enhancement allegations, including the vicarious firearm enhancement, if they so choose.

We also note that section 12022.53, subdivision (e)(2), provides that a gang enhancement pursuant to section 186.22 "shall not be imposed on a person *in addition* to an enhancement imposed pursuant to [section 12022.53, subdivision (e)], unless the person personally used or personally discharged a firearm in the commission of the offense." (Italics added.) There was no true finding, and the evidence does not show, that Franco personally used or discharged a firearm in the commission of the charged offenses. Therefore, if the People retry the vacated enhancement allegations and they are found

23

true, the court should not impose both the section 186.22 enhancements *and* the vicarious firearm enhancements available under section 12022.53, subdivision (e).

Lastly, if imposing a vicarious firearm enhancement, the court may consider whether to exercise its discretion to impose a lesser firearm enhancement, but we express no opinion as to how the court should exercise its discretion on remand. (*People v. Tirado* (2022) 12 Cal.5th 688, 692.)

DISPOSITION

Franco's sentence and the jury's true findings on the gang-related enhancement allegations (§ 186.22, subd. (b)), including the vicarious firearm enhancement (§ 12022.53, subds. (d) and (e)(1)), are vacated.

The matter is remanded to the trial court for further proceedings in accordance with this opinion. The People shall have 60 days from the date of the remittitur to file an election to retry Franco on the vacated enhancements. If the People elect not to retry them, or after any retrial, the trial court shall resentence Franco accordingly. At resentencing, the trial court may exercise its sentencing discretion with respect to the vicarious firearm enhancement under section 12022.53.

Following the conclusion of proceedings on remand, the trial court shall amend the abstract of judgment as necessary and forward copies of the

amended abstract to the appropriate law enforcement and custodial officials. In all other respects, the judgment is affirmed.


BUCHANAN, J.

WE CONCUR:


MCCONNELL, P. J.


HUFFMAN, J.

25